**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

JORAN REALTY NY CORP., a/k/a Joran
Realty Corp., a/k/a Joran Realty Harder Hall
a/k/a Harder Hall Resort and Spa,

      Debtor.
_____/

KENNETH A. WELT, Chapter 7 Trustee for
JORAN REALTY NY CORP., etc, Debtor,

      Plaintiff,
vs.

MARC SHENKER and
MARMEL REALTY CORP.,

      Defendants.
_____/

Case No.: 06-15353-LMI
Chapter 7

Adv. No.: 08-01708-LMI

**PLAINTIFF'S RESPONSE TO MARK SHENKER'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Kenneth A. Welt, Chapter 7 Trustee ("Trustee Welt") of the bankruptcy estate of Joran Realty NY Corp., etc., Debtor ("Debtor"), by and through its undersigned counsel and pursuant to the Joint Agreed Order (I) Granting Motion to Continue Pretrial Conference, Trial and Related Debts and Deadlines; and (II) Setting Briefing Schedule for Dispositive Motions (CP 37) files its Response to Mark Shenker's Motion for Summary Judgment (CP 45) and states as follows:

**<u>Brief Background</u>**

The parties have stipulated that the only question for the Court is whether the Debtor

received reasonably equivalent value for the transfer of real property. The Debtor transferred a condominium with $169,307.57 in equity to its principal, Mr. Shenker. Prior to the time the deed transferring the condominium was recorded, $50,000.00 was transferred to the Debtor, presumably at the direction of Mr. Shenker. Trustee Welt seeks to avoid the transfer of the condominium from the Debtor to Mr. Shenker to the extent that the Debtor did not receive reasonably equivalent value for the transfer of the condominium. That is, Trustee Welt seeks to recover $119,307.57 from Mr. Shenker. Trustee Welt has taken the position that the relevant time for the reasonably equivalent value analysis is at the time the deed transferring the condominium was recorded pursuant to 11 U.S.C. § 548(d)(1)("a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee") and Fla. Stat. § 695.01(1)("[n]o conveyance, transfer, or mortgage of real property ... shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law ..."). *See also* cases cited in Plaintiff's Motion for Summary Judgment.

In his Motion for Summary Judgment, Mr. Shenker appears to take the position that there is no significance to the recording of the deed transferring the property from the Debtor to Mr. Shenker and the Court must look at the totality of the circumstances in determining whether the Debtor received reasonably equivalent value for the transfer. As a fall back position, Mr. Shenker argues that even if the debtor did not receive reasonably equivalent value for the transfer, and hence the transfer is an avoidable fraudulent transfer, equity requires that Mr. Shenker be given credit for amounts transferred to the Debtor after the fraudulent transfer and prior to the petition date.

**Argument**

**I. At the time of the transfer, the Debtor did not receive reasonably equivalent value for the transfer.**

Section 548(d)(1) of the Code, Fla. Stat. § 695.01(1) and the reported cases leave no doubt that the proper time to analyze whether the Debtor received reasonably equivalent value for the transfer of the condominium is when the deed was recorded. Indeed, the cases cited in Mr. Shenker's Motion for Summary Judgment support this proposition. *Advanced Telecomm. Network, Inc. v. Allen (Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325, 1337 (11th Cir. 2007)("It is clear from the record that ATN received *nothing* in return at the time of the actual transfer..."); *Creditors' Comm. of Jumer's Castle Lodge, Inc. v. Jumer (In re Jumer's Castle Lodge, Inc.)*, 338 B.R. 344, 354 (C.D.Ill. 2006)("Furthermore, whether *reasonably equivalent value* has been given is a question of fact that must be evaluated as of the date of the transaction, rather than through the 20/20 vision of hindsight").

When properly analyzed as of April 26, 2006, when the Quit-Claim Deed for the Alexander Condominium was recorded, it is clear that the Debtor had only received $50,000.00 for the transfer of the condominium with $169,307.57 in equity and did not receive reasonably equivalent value for the transfer of the Alexander Condominium to its principal. Accordingly, pursuant to the parties' stipulation regarding each of the other elements of 11 U.S.C. § 548, the Debtor's transfer of the Alexander Condominium to its principal, Mr. Shenker, is avoidable as a fraudulent transfer.

**II. No bright line rule exists that a fraudulent transferee is entitled to a credit against its liability for post-transfer, pre-petition transfers to a debtor. A court's decision to allow such an equitable adjustment requires full development and examination of the facts and the relative positions of the parties.**

In his Motion for Summary Judgment, Mr. Shenker attempts to parlay two decisions of a bankruptcy court in this district, and an Eleventh Circuit Court of Appeals opinion affirming one of those decisions on the grounds that the bankruptcy court's equitable determination was not outside of the "range of possible conclusions that the trial judge may reach," into a bright line rule that a fraudulent transferee is entitled to a credit against its liability for post-transfer, pre-petition transfers to a debtor.

An examination of Judge Hyman's decisions in *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348 (Bankr.S.D.Fla. 2007)[1] and *Bakst v. Wetzel (In re Kingsley)*, 2007 WL 1491188 (Bankr.S.D.Fla.

---

[1]

Like *Kingsley* and unlike the instant case, *Sawran* is an intra-family case involving small dollar amounts. In *Sawran*, the trustee avoided a $20,000 preferential transfer from the debtor to her father, who accepted the $20,000 in proceeds from the settlement of the debtor's personal injury claim in return for supporting the debtor for a number of years. *Sawran*, 359 B.R. at 350. The father told the daughter that he would hold the funds somewhat in the form of an undeclared spendthrift trust, giving her the $20,000 as needed because he was concerned about her spending habits. *Id.* Father fell severely ill and transferred the $20,000 to his other children, to, for lack of a better term, act as co-trustees. All told, the siblings returned $12,000 to the Debtor prior to the petition date. *Id.* at 351.

The Trustee sought to recover the $20,000 from the siblings pursuant to 11 U.S.C. § 550 as subsequent transferees of the avoided preferential transfer from the daughter to father. The sibling defendants sought a credit in the amount of $12,000 against their liability as subsequent transferees. The court agreed, finding the sibling defendants were entitled to a $12,000 credit based upon the court's equitable powers under 11 U.S.C. § 105 and the single satisfaction rule of 11 U.S.C. § 550(d).

2007) and the Eleventh Circuit's opinion affirming the latter decision, 518 F.3d 874 (11 Cir 2008), lead to the conclusion that a trial court may use its equitable powers to reduce a fraudulent transferee's liability, but that such an equitable determination is quite fact specific and certainly is not automatic.

In *Kingsley*, father received the proceeds of a tax refund in the amount of $4,516 from daughter and son-in-law in order to remove the funds from their joint bank account to prevent bank from seizing the funds to satisfy daughter and son-in-law's credit card debt. The trustee sought to avoid the transfer as both actually and constructively fraudulent and sought recovery from father. *Kingsley*, 2007 WL 1491188 at *1. Father raised the defense that he was entitled to credit for all but $215.16 of the $4,516 transferred to him because he had paid the difference ($4,300.84) either to his daughter and son-in-law's creditors, or to them directly, prior to their filing a petition in bankruptcy. *Id*. The court found that the transfer of $4,516 was both actually and constructively fraudulent. *Id*. at *2.

The bankruptcy court then commenced to examine the issue of whether a fraudulent transfer under section 548 could be "corrected," hence reducing the fraudulent transferee's liability. The court noted that there was no case law that addresses the effect of the repayment of a fraudulent transfer under section 548, *Kingsley*, 2007 WL 1491188 at *3., and looked to a section 727(a)(2) objection to discharge case where the debtor argued that he was entitled to a discharge because he had reversed the fraudulent transfer prior to his petition date. *David v. Davis (In re Davis)*, 911 F.2d 560 (11th Cir. 1990). In particular, the debtor argued that the word "transferred" as used in section 727(a)(2)(A) should be read to mean "'transferred and remained transferred' at the time a debtor files his bankruptcy petition." *Davis*, 911 F.2d at 562. The Eleventh Circuit rejected this argument:

> The statutory language of section 727(a)(2)(A) is plain and unambiguous. Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not. We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face.[2]

*Id.* at 562.

The Court then looked to a case under the Uniform Fraudulent Transfer Act where Judge Posner rejected the notion that fraudulent transfers can be undone by prepetition transfers to or for the benefit of the debtor.

> [W]e think the inquiry should stop at the first stage of the analysis, that is, should stop after it is determined that the transfer was not supported by consideration. If it was gratuitous, the fact that some or for that matter all of it may later have seeped back to the debtor does not legitimize the transfer. ...
>
> A compelling reason for stopping at the first stage is that the seeping back of the transferred money or property to the transferor is strong evidence of actual fraud by him. It is one thing to make a gift; it is another to transfer money to someone whom you expect to retransfer it to you; the inescapable implication is that you are parking your money in a place you hope your creditors won't know to look.

*Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 720 (7th Cir. 2002).

The analysis of the *Davis* and *Nostalgia* courts notwithstanding, the bankruptcy court found that under these facts, the father was equitably entitled to credit for $4,300.84 in prepetition payments made to either to his daughter and son-in-law's creditors, or to them directly.

---

[2] Note that the bankruptcy court did not explain how it finds the single satisfaction rule of section 550(d) as one of the grounds upon which it relies in finding that the transferee was entitled to the credit in light of its cited *Davis* opinion and section 550(a) which allows a trustee to recover "the property transferred, or ... the value of such property." Section 550(a) does not say "the property transferred and remained transferred, or ... the value of the property." Regardless, on appeal, the Eleventh Circuit did not address whether a *per se* rule exists pursuant to section 550(d) requiring a fraudulent transferee be afforded credit for prepetition transfers to the debtor. *Kingsley*, 518 F.3d at 575. ("[t]he sole issue on appeal is whether the bankruptcy court erred in exercising its equitable powers to calculate Wetzel's liability pursuant to 11 U.S.C. § 550 and Fla. Stat. 726.109.")

> Given the facts of this case, the Court finds that despite the existence of actual fraud, the Defendant's fraudulent transfer liability is subject to an adjustment pursuant to Florida Statutes § 726.109(3) for prepetition repayments the Defendant made to, or on behalf of, the Debtors.

*Kingsley*, 2007 WL 1491188 at *5

The sole issue on appeal to the Eleventh Circuit Court of Appeals was "whether the bankruptcy court erred in exercising its equitable powers to calculate Wetzel's liability pursuant to 11 U.S.C. § 550 and Fla. Stat. § 726.109." *Kingsley*, 518 F.3d at 876.

With its legal framework set, the Eleventh Circuit began its analysis with the applicable standard of review, which was abuse of discretion. In explaining its role under this standard, the Court stated, "In reviewing for abuse of discretion, we recognize the existence of a 'range of possible conclusions the trial judge may reach,' and 'must affirm unless we find that. . .the court has made a clear error of judgment or has applied the wrong legal standard.'" *Id*. Next, the Court acknowledged that it had not previously addressed whether a bankruptcy court may adjust the amount of recovery to reflect the transferee's pre-petition repayment of funds or return of property to the debtors. *Id.*  The Court stated that "[s]ome courts have declined to undertake such an inquiry, holding that the fraudulent transfer should not be legitimized or offset by any repayments to the debtor." *Id.* (citing *Nostalgia Network)*. It also referenced *In re Jackson*, 318 B.R. 5 (Bankr. D.N.H. 2004), *aff'd* 459 F.3d 117 (1st Cir. 2006), where the court exercised its equitable powers to adjust the amount of recovery to the bankruptcy estate where the defendant-transferee used proceeds from the sale of the fraudulently transferred property to pay the debtor's business and family expenses.

The Court noted that the bankruptcy court's holding did benefit the transferee despite a finding of actual fraud, but did not bar recovery all together. Importantly, it concluded by circling back to the standard of review referenced at the outset of its analysis and stated, "in light of the cases

discussed above, the bankruptcy court did not misapply the law or make a clear error of judgment in reducing the amount of recovery to the bankruptcy estate. Accordingly, the bankruptcy court did not abuse its discretion." *Id.* Because the Court found that the bankruptcy court had not abused its discretion, it affirmed the determination that the father was equitably entitled to credit for $4,300.84 in prepetition payments made to either to his daughter and son-in-law's creditors, or to them directly.

While the holding of *Kingsley* appears to provide a defense to a transferee who "pays back" a fraudulent transfer, the Eleventh Circuit's analysis far from set a bright light rule. Importantly, the appellate court reviewed the bankruptcy court's determination on an abuse of discretion standard, which is highly deferential to the trial court. Equitable determinations made in the context of fraudulent transfer judgments are clearly committed to the trial court's discretion and are reviewed only for abuse of discretion. *Jackson*, 459 F.3d at 127.

The term "discretion" itself denotes the absence of a hard and fast rule. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984). When invoked as a guide to judicial action, it means sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. *Id.* (citing *Langnes v. Greene*, 282 U.S. 531, 541 (1931).

> Equitable considerations are largely fact-driven. "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." Full development and examination of the facts and the relative positions of the parties are imperative in the exercise of the court's equitable powers.

*Quezner v. United States (In re Quezner)*, 19 F.3d 163 at 165 (5th Cir. 1993)(citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329-30 (1944)); see also *Foreman v. Foreman*, 313 S.E. 2d 312, 314 (S.C. Ct. App. 1984)(general principles of equity require "[f]irst, the equities of both sides are to be considered, and each case must be decided on its own particular facts.  Second, the court of equity must 'balance the equities' between the parties in determining what if any relief to give.  The equities on both sides must be taken into account.")

### **Conclusion**

Here, Debtor's transfer of the Alexander Condominium to its principal was an avoidable fraudulent transfer as a matter of law. No bright-line rule exists pursuant to which a fraudulent transferee is given credit for post-transfer, pre-petition payments to a debtor.  Mr. Shenker has not made a showing that he is entitled to equitable relief entitling him to any credit for any amounts paid to the Debtor after the fraudulent transfer and before the petition date.

Dated: October 28, 2009

/s/ Andrew D. McNamee
Andrew D. McNamee
Florida Bar No. 448060
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: 305.789.3200
Facsimile: 305.789.3395
Attorneys for Trustee Welt
amcnamee@stearnsweaver.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was furnished via the Court's CM/ECF system to Richard S. Lubliner, counsel for the defendants, this 28th day of October, 2009.

      /s/ Andrew D. McNamee
      Attorney